A94A0674. CAFAGNO v. HAGAN et al.
(445 SE2d 380)

SMITH, Judge.

Linda and Albert Hagan filed a petition to adopt their granddaughter, alleging that the child's natural parents had significantly failed without justifiable cause to provide for her care and support as required by law and judicial decree. OCGA § 19-8-10 (b) (2). The mother of the child, the Hagans' daughter, surrendered her parental

rights. The natural father, Tony Cafagno, who is divorced from the mother, filed an objection to the adoption. After a hearing, the trial court entered an order granting the adoption. When Cafagno's motion for new trial was granted, the Hagans sought an evidentiary hearing and reconsideration of the order granting a new trial. After an evidentiary hearing, the court granted the Hagans' motion for reconsideration and reinstated its original order granting the adoption. Cafagno appeals.

1. In the original order entered May 24, 1992, granting the petition for adoption, the trial court stated that in addition to the testimony presented at the hearing, it "gave consideration to" an "investigation report to the court provided for in OCGA § 19-8-16 and the recommendations contained therein." In his motion for new trial, as amended, Cafagno contended the court erred in considering this report. He argued he had no notice that an investigation had been made, did not know the report would be used, and had no opportunity to rebut its conclusions and recommendations. The trial court granted Cafagno's motion in order to ensure that Cafagno's right to confront and examine the investigator was not violated.

An evidentiary hearing was held on September 28, 1992, at the Hagans' request on the issue of Cafagno's knowledge of the investigation and report. By order dated October 7, 1992, the trial court reinstated the May 24 order granting the adoption, ruling that Cafagno had actual and legal notice of the investigation and report and waived his right to access to the report by his inaction.

On appeal, Cafagno repeats the argument made below, contending the trial court erred in considering the report. We find no merit in this enumeration. We agree with the trial court that Cafagno had actual and legal notice of the investigation and that a report would be made to the court. We also agree with the trial court that Cafagno's failure to request access to the report or to subpoena the investigator for examination at the hearing constituted a waiver of his rights to do so.

(a) At the evidentiary hearing held in response to the Hagans' motion for reconsideration, the investigator testified she informed Cafagno explicitly that the investigation was being conducted and that a report would be made to the court. Although Cafagno testified otherwise, the trial court, as the trier of fact, resolved the conflict in the evidence by finding that the testimony of the investigator was more credible. The court was authorized to find that Cafagno had actual knowledge of the report because the investigator told him about it.

(b) The trial court also concluded that Cafagno had legal knowledge of the investigation and report because they are required under OCGA § 19-8-16 (a). Contrary to Cafagno's argument that an investi-

gation and report were not required because this was a relative adoption, not all relative adoptions are excepted from the report requirement. OCGA § 19-8-16 (b) provides an exception only in relative adoptions where surrender or termination of parental rights has been obtained. This adoption was not sought pursuant to a surrender of parental rights, but because petitioners alleged that Cafagno failed without justifiable cause to significantly provide for his daughter's care and support for over one year. Therefore, the exception provided by OCGA § 19-8-16 (b) does not apply to this adoption, and an investigation and report were required under OCGA § 19-8-16 (a).

(c) Relying on *McNabb v. Carver*, 242 Ga. 526 (250 SE2d 447) (1978), Cafagno contends that even conceding he had knowledge of the investigation and report, such knowledge does not constitute waiver. In *McNabb*, the trial court based an award of child custody to the father on evidence presented at several hearings and on its review of reports of DFCS based on an evaluation to which all parties consented. On appeal, the mother contended she had been denied access to the report and her consent to the evaluation did not waive her right to exercise her rights with regard to the DFCS report. The Supreme Court agreed, holding that "*in the absence of waiver*, it was error for the issue of child custody to be decided on the basis of a report of the Department of Family & Children Services where the losing parent *was denied access* to that report." (Emphasis supplied.) Id. at 528.

Nothing in *McNabb* conflicts with the trial court's ruling in this case. It is clear that in *McNabb* the mother had *sought* access to the report, which was denied. Had that been the case here, we would not hesitate to agree that the trial court erred in basing its decision even in part on the report. It is undisputed, however, that the situation is different here. Cafagno was not denied access to the report; he never asked to see it. Despite knowing the identity of the investigator and having spoken with her, he did not subpoena her presence at the hearing in order to cross-examine her. Having had both actual and legal knowledge of both the investigation and the report, Cafagno had a duty to act if he wished to exercise his right to access. Because he failed to act despite his knowledge, the trial court correctly found these rights were waived.

2. Cafagno contends the trial court failed to comply in several technical respects with the requirements of OCGA § 19-8-18 (a) (1). That statute requires the court to hold a "full hearing" and examine the parties under oath. It also provides that the court "at such times shall give consideration to the investigation report to the court provided for in Code Section 19-8-16 and the recommendations contained therein."

Cafagno argues that the court erred in failing to examine Albert

Hagan under oath. The transcript shows that after Linda Hagan was called as a witness and testified on direct examination and on cross-examination, the Hagans' counsel stated in his place that Albert Hagan's testimony "would be duplicative." He offered that Albert Hagan's testimony would be exactly the same as that of his wife. The court allowed this proffer, and Cafagno did not object. "[A]ttorneys are officers of the court and their statements in their place, if not objected to, serve the same function as evidence." (Citation, punctuation, and emphasis omitted.) *Ga. Bldg. Svcs. v. Perry*, 193 Ga. App. 288, 300 (6) (387 SE2d 898) (1989). Since Cafagno did not object, the trial court did not err by accepting counsel's statement regarding Albert Hagan's testimony in lieu of having Hagan testify.

Cafagno also asserts that the language of the statute requires the court to "consider" the investigative report *during* the hearing, and that the court did not do so in this case. However, even assuming Cafagno's interpretation of the statute is correct, the record does not affirmatively indicate that the trial court failed to "consider" the report during the hearing. Although it is mandatory for the trial court to consider the report, it need not be read in detail. *Ridgley v. Helms*, 168 Ga. App. 435, 439 (3) (309 SE2d 375) (1983). There is no requirement that the report be entered into evidence. *Hayes v. Watkins*, 163 Ga. App. 589, 590 (3) (295 SE2d 556) (1982). The report was in the trial court's possession and we cannot assume the court did not "consider" it during the hearing.

3. In his final enumeration of error, Cafagno contends the trial court erred in finding that he had failed without justifiable cause to significantly provide for his daughter's care and support in the preceding 12-month period. Cafagno correctly notes that a natural parent's rights may be terminated only under compelling circumstances found to exist by clear and convincing proof. "Requiring that the trial court find 'clear and convincing evidence' of a parent's unfitness prior to terminating the parent's rights in his child reflects the value society places on the 'freedom of personal choice in matters of family life' and the judgment society makes 'about how the risk of error should be distributed between the litigants.' [Cit.] . . . It also reduces the ' "possible risk that a factfinder might decide to (deprive) an individual (of the rights to his child) based solely on a few isolated instances of unusual conduct (or) . . . idiosyncratic behavior." ' [Cits.]" *Blackburn v. Blackburn*, 249 Ga. 689, 693 (292 SE2d 821) (1982).

Cafagno admits his failure to pay child support required under his decree of divorce from the child's mother during the 12 months preceding the filing of the adoption petition. He makes two arguments, however, that this failure did not support termination of his parental rights.

First, he maintains that he believed he was not required under

the specific language of the divorce decree to pay child support. The decree provides that Cafagno's child support payments to his former wife will continue until various conditions occur: "the child reaches the age of eighteen years, marries, enters the Armed Services, ceases to live with the wife, becomes self-supporting, or dies, whichever event shall first occur." In October 1991, Cafagno entered into a consent order placing custody of the child with the Hagans, under which the child's mother was to pay child support of $50 per week to her parents. The order also provided that "visitation rights and child support obligations of the father, Tony M. Cafagno, shall remain unmodified and unchanged as set forth in the final judgment and decree of divorce." Cafagno argues that he kept up his visitation, but understood that because his daughter had ceased to live with his former wife and was living with the Hagans, under the terms of the decree he was not obligated to pay child support.

This belief, even if it existed, was not reasonable. "It is the joint and several duty of each parent to provide for the maintenance, protection, and education of his child until the child reaches the age of majority, except to the extent that the duty of one parent is otherwise or further defined by court order." Former OCGA § 19-7-2. We agree with the trial court that the consent order "would not lead a reasonable person to conclude that he had no obligation to pay support" under the circumstances that existed after the consent order was entered, particularly when the evidence indicated that Cafagno's former wife was also living with her parents and the child at least part of the time.

Second, relying on *Crumb v. Gordon*, 157 Ga. App. 839, 842 (2) (278 SE2d 725) (1981), Cafagno argues that even if his interpretation of the divorce decree does not provide a legal reason for failing to pay support, it provides a "reasonable excuse." In *Crumb*, the mother of the child "waived" child support in a divorce decree, and the natural father "waived" visitation. Subsequently, the natural father sought unsuccessfully to modify the decree to provide for both visitation and child support. The mother's current husband then filed an adoption petition, alleging that the natural father had not supported the child. The court denied the petition despite the natural father's undisputed failure to support the child, reasoning that although child support is not waivable and the decree was therefore ineffective, the father's reliance on the decree still provided a reasonable excuse (although not a legal one) for his failure to pay child support. Id. at 841-842.

Cafagno testified that the Hagans induced him to enter into the consent order by telling him they would be "lenient" with him regarding child support. He maintained they never asked for child support

once the consent order was entered, but instead, as in *Crumb*, "entrapped" him into failing to pay support in order to supply grounds for terminating his parental rights.

Even if believed, Cafagno's testimony that the Hagans "sanctioned or encouraged his failure to pay the court-ordered child support would not establish a legal justification for his failure to comply with the court order. [Cits.]" *Jessee v. Nash*, 169 Ga. App. 746 (315 SE2d 260) (1984). Unlike the situation in *Crumb*, the evidence in this case does not demonstrate even a "reasonable excuse" for Cafagno's failure to pay child support. Moreover, Cafagno's contention is belied not only by the testimony of Linda Hagan, but by that of Cafagno himself and his mother.

Linda Hagan testified she had at least six discussions with Cafagno regarding his child support obligations, and provided him with statements on a quarterly basis showing child support and medical bill payments owed. She testified that in her conversations with Cafagno she asked him to pay the current court-ordered child support to her. According to Hagan, Cafagno never indicated that he had a different understanding or that he understood his obligation to be unclear.

Cafagno's mother testified that at least one child support payment was, in fact, made to the Hagans after the consent order. This indicated that Cafagno knew he was obligated to make payments. In addition, although Cafagno denied Hagan had ever asked him for child support payments, Linda Hagan taped a conversation with Cafagno in which his child support arrearage was discussed. When confronted with this tape during cross-examination, Cafagno admitted he *had* discussed child support with Linda Hagan but had not made payments because he "wasn't sure on which grounds [he] was supposed to pay child support."

The evidence presented supplied clear and convincing proof that although Cafagno enjoyed visiting with and playing with his child on occasion, he knowingly failed to provide any support for her care and maintenance for a period of approximately 16 months despite being asked to do so. The trial court did not abuse its discretion in terminating Cafagno's parental rights and granting the petition for adoption.

*Judgment affirmed. Pope, C. J., and McMurray, P. J., concur.*

DECIDED JUNE 23, 1994.

*Zachary & Segraves, Rick S. Sexton*, for appellant.

*Burkett, Schneider & Mumford, William Schneider*, for appellees.