A97A0471. MATHERLY v. KINNEY et al.
(489 SE2d 89)

SMITH, Judge.

Mr. and Mrs. Daniel T. Kinney sought adoption of Mrs. Kinney's orphaned niece. Lois Matherly, the mother of the child's deceased father, appeals the grant of that adoption. We affirm.

1. Matherly contends the trial court abused its discretion in granting the adoption. In an adoption case, "the trial judge sits as both judge and jury and is vested with a broad range of legal discretion. The purpose of the hearing upon the petition of adoption is to determine the disposition of that petition which is in the best interest of the child." (Citations and punctuation omitted.) *Barkley v. Painter,* 157 Ga. App. 236, 237 (1) (276 SE2d 903) (1981). In this case, because no natural parent survives, the only considerations are whether the adopting parents are worthy and able to care for the child and whether the adoption is in the best interest of the child. Id.; OCGA § 19-8-18 (b).

Construed in favor of the trial court's decision, the evidence showed that the child's parents were divorced in 1992, with custody placed in the child's mother, Deborah Crawford King. Evidence was presented that the child's father, Stephen King, failed to pay child support for a substantial period of time and that Deborah was unable to locate him or enforce his obligations. In 1994, Deborah became ill with brain cancer, and the Kinneys took Deborah and her child into their home, moving to a larger house with a separate suite for Deborah and the child. In the summer of 1995, Deborah learned that her illness was terminal and, in contemplation of adoption, executed a surrender of parental rights in favor of the Kinneys. She also executed a will in which she expressed her wish that the Kinneys assume guardianship of the child. She died in October 1995.

The day after Deborah's death, Stephen picked up the child at the Kinneys' home and said "she was never coming back." The Kinneys were unable to locate Stephen or the child. Shortly after taking the child from the Kinneys, Stephen consented to a temporary guardianship in Matherly, his mother, which was granted without a hearing by the clerk of the probate court. Matherly testified that Stephen gave the child to her because he was arrested for a drug offense and wanted her to take care of the child "until he saw what was going to happen to him and got his head on straight and got married." Stephen told his mother he was going into drug rehabilitation, but he

first traveled to Jamaica, where he was murdered.

Ms. Kinney sent a certified letter to Matherly asking to see the child, but Matherly responded that Ms. Kinney would not be allowed to see the child under any circumstances. Matherly acknowledged that she did not allow the child to see the Kinneys from the time Stephen took the child until the court ordered visitation in April 1996.

The guardian ad litem appointed by the court on behalf of the child expressed concern that the child had been removed without warning from the Kinneys' home, where she had lived for a year with her dying mother, and that she had been denied all contact with them until the court intervened. The guardian was troubled at Matherly's attempts to conceal the child's past, for example, from the child's new school and to create "this new life as though this other family didn't exist." She saw Matherly's exclusive focus on the child as "unhealthy and unnatural" and "obsessive." She was also concerned about the child's exposure to Matherly's other son, because of his violent behavior, drug use, and the presence of vicious dogs on his property. Another witness testified that Stephen and this son had been involved in an argument and "chain fight," Stephen was injured, and the police were called.

In her brief, Matherly does not contend or point to any evidence that the Kinneys are unfit to adopt the child. Instead, she argues only that the trial court abused its discretion because its order will "exclude the child from one side of her extended family." The Kinneys, however, stipulated that visitation with Matherly was appropriate, and the trial court provided for visitation in the adoption order. See generally OCGA § 19-8-15.

"In adoption proceedings where the trial judge sits as the trier of factual issues and considers the credibility of the witnesses, if there is any evidence to support the findings of the trial court this court must affirm. The evidence was sufficient to support the findings. On appeal the evidence must be construed to uphold the findings and judgment rather than to destroy them. We find the trial judge did not abuse his discretion." (Citations omitted.) *Peterson v. Spence*, 146 Ga. App. 209 (245 SE2d 871) (1978); see also *Lee v. Stringer*, 212 Ga. App. 401, 403 (441 SE2d 861) (1994).

2. Matherly also complains that the trial court erred in dissolving the temporary guardianship of the child's person granted to her by the clerk of the probate court before her son's death. OCGA § 29-4-4.1 (a) (1). Matherly contends that this guardianship, although temporary in character and obtained without a hearing or a judge's approval, continues to exist in perpetuity after the death of her son and prevents any adoption from taking place over her objection. The record in this case, however, reveals that Matherly has filed a new guardianship petition in the probate court, which would appear

unnecessary if the temporary guardianship in fact remained in force after her son's death.

But we do not reach this issue because the temporary guardianship of the child's person was also an issue in a separate custody action between the same parties. The permanent custody order issued by the superior court, the final order in that action, also declared Matherly's temporary guardianship over the child's person dissolved, and Matherly's application for discretionary review of the custody order was denied. *Matherly v. Kinney*, A97D0015 (decided September 11, 1996).

"Collateral estoppel precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies. Like res judicata, collateral estoppel requires the identity of the parties or their privies in both actions. However, unlike res judicata, collateral estoppel does not require identity of the claim — so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim." (Footnotes omitted.) *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 866-867 (2) (463 SE2d 5) (1995). Under the doctrine of collateral estoppel, the final judgment in the custody action expressly dissolving the temporary guardianship precludes relitigation of this issue by the same parties in the adoption proceeding.

3. Matherly asserts as error the trial court's grant of the adoption without requiring live testimony from the child's uncle, Daniel T. Kinney. The transcript shows that counsel for the Kinneys stated that both the Kinneys would testify, but rested without calling Mr. Kinney. As this Court noted in *Cafagno v. Hagan*, 213 Ga. App. 631, 633 (2) (445 SE2d 380) (1994), OCGA § 19-8-18 (a) (1) provides that the trial court "shall proceed to a full hearing on the petition and the examination of the parties at interest in chambers, under oath." In *Cafagno*, it was not necessary to reach the issue of whether failure to call one of the parties at interest invalidated the adoption, because counsel for the petitioners stated in his place that the husband's testimony would be identical to that of the wife. In the absence of objection, this Court accepted counsel's statement as the equivalent of testimony. Id. at 633-634 (2). Now, however, we reach that issue.

There is no question that a "full hearing" on the petition took place. Matherly and the Kinneys appeared, represented by counsel, and presented the testimony of numerous witnesses in opposition to and in support of the adoption. Evidence was offered that Mr. Kinney is "capable of assuming responsibility for the care, supervision, training, and education of the child." OCGA § 19-8-18 (b). Mr. Kinney verified under oath the petition for adoption in which the Kinneys stated that they were financially, physically, and mentally able to have per-

manent custody of the child. Testimony was presented by Ms. Kinney, a hospice volunteer, the guardian ad litem, and the court family investigator regarding Mr. Kinney's willingness and ability to care for the child. As *Cafagno* notes, the actual presentation of live testimony from a petitioner is not necessary so long as an equivalent is provided. Id. at 634.

Moreover, Matherly raised no objection to the failure to place Mr. Kinney on the stand, either when appellees rested or at the close of evidence, when the error could have been remedied without requiring a new trial. A timely objection is necessary to preserve this issue for appeal. "It is necessary, in order to make the same a basis for appellate review that opposing counsel make proper objection or invoke some ruling of the court. A party cannot ignore what he thinks to be error, take his chance on a favorable verdict, and complain on appeal." (Citations and punctuation omitted.) *West v. State*, 224 Ga. App. 190, 191 (2) (480 SE2d 238) (1997).

Matherly also has not demonstrated harmful error. "An appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful." (Citations and punctuation omitted.) *City of College Park v. Pichon*, 217 Ga. App. 53, 54 (1) (456 SE2d 686) (1995). She has not made a proffer of evidence, pointed to any support in the record, or even contended that Mr. Kinney is an unwilling or unsuitable adoptive parent; she acknowledges that his live testimony is a "technical requirement."

Under these circumstances, given the submission of a verified petition and other evidence of Mr. Kinney's fitness, Matherly's failure to object, and Matherly's failure to demonstrate any harm, we conclude that the error, if any, in failing to place Mr. Kinney on the stand was harmless.

*Judgment affirmed. McMurray, P. J., and Beasley, J., concur.*

DECIDED JULY 14, 1997.

*Rubin, Winter, Rapoport & Hall, Robert E. Hall, Jeffrey C. Hamling*, for appellant.

*Walbert & Mathis, David A. Webster, Lauren G. Alexander, Christopher J. McFadden*, for appellees.