A00A1256. ALBRIGHT et al. v. PETERSON et al.
(539 SE2d 919)

BARNES, Judge.

The Albrights, maternal grandparents of D. M. P., appeal the final decree of adoption that denied their petition to adopt D. M. P. and granted the adoption petition of the Petersons, the child's paternal uncle and aunt. For the reasons that follow, we affirm the trial court's judgment.

1. The Albrights first contend that the final decree of adoption is void because the juvenile court judge who presided over the consolidated adoption cases was not authorized to do so. The record indicates that the superior court requested that a juvenile court judge be designated to rule upon both adoption petitions. The Albrights claim that in doing so the superior court failed to strictly follow OCGA § 15-1-9.1. Specifically, they argue that there was no statutory basis for requesting judicial assistance, that the chief judge of the superior court did not make the request, that the superior court did not file a written request, and that the juvenile court judge was never appointed "superior court judge pro tempore."

But where there is no objection to the appointment of a juvenile court judge sitting as a superior court judge before the adoption hearing commences, the issue is not preserved for appellate review. See *Troncone v. Troncone*, 261 Ga. 662, 663 (3) (409 SE2d 516) (1991). Parties cannot wait until after they see the result of the hearing to challenge a presiding judge's authority under OCGA § 15-1-9.1. *Bennett v. Jones*, 218 Ga. App. 714, 715 (1) (463 SE2d 158) (1995). The

Albrights have not cited to any place in the record where they raised and preserved this contention. Although they point to affidavits attached to their appellate brief, "a brief or an attachment thereto cannot be used as a procedural vehicle for adding evidence to the record." *Rowe v. Rowe*, 195 Ga. App. 493 (1) (393 SE2d 750) (1990). Consequently, this issue was not preserved for appeal.

2. The Albrights contend that the trial court abused its discretion in finding that the Petersons were the proper parties to adopt D. M. P.

> In an adoption case, the trial judge sits as both judge and jury and is vested with a broad range of legal discretion. The purpose of the hearing upon the petition of adoption is to determine the disposition of that petition which is in the best interest of the child.

(Citations and punctuation omitted.) *Matherly v. Kinney*, 227 Ga. App. 302 (1) (489 SE2d 89) (1997). Pointing to evidence in their favor, the Albrights urge that "given its weight," the trial court abused its discretion. But questions of credibility and the weight to be attributed to conflicting evidence are matters for the trial court, and we examine only its sufficiency. *Bragg v. State of Ga.*, 226 Ga. App. 588, 589 (2) (487 SE2d 137) (1997); *Matherly*, supra, 227 Ga. App. at 303 (1). On appeal, we construe the evidence to uphold the trial court's findings and judgment and affirm if there is any evidence to support the findings. Id.; *Bragg*, supra, 226 Ga. App. at 589 ("[w]hen even slight evidence supports the trial court's denial of a petition to adopt, it cannot be held that the discretion residing in that court was abused, particularly if that slight evidence indicates the best interest of the child will be served by denying the petition to adopt").

So construed, the evidence showed that D. M. P. had been born out of wedlock and the biological father never legitimated her. In March 1998, D. M. P.'s biological mother was killed. At that time, the Albrights were residing in Arkansas. Later that month, the Department of Family & Children Services ("DFCS") took D. M. P. into protective custody. When the Petersons offered their home, DFCS conducted a home study, and the juvenile court temporarily placed the child with the Petersons. D. M. P. was then 11 months old.

In September 1998, a jury convicted D. M. P.'s biological father of the murder of D. M. P.'s mother. The father was sentenced to life imprisonment. The next month, the father surrendered his parental rights in favor of D. M. P.'s adoption by the Petersons, who petitioned to adopt her on October 6. On January 28, 1999, the Albrights also petitioned to adopt her.

During the hearing on the consolidated cases, a DFCS case-

worker, who had visited the Petersons' home monthly, testified that the Petersons were fulfilling their obligations of caring for D. M. P. and that their home was a proper one for the child. D. M. P., who was 23 months at the time of the hearing, had been living with the Petersons since the juvenile court granted them temporary custody. Mrs. Peterson testified that she loved D. M. P., wanted to rear her, and was financially able to do so. She testified that she and her husband had one six-year-old son and that her son and D. M. P. got along like brother and sister.

Although the trial court found that both the Petersons and the Albrights were fit and proper parents for D. M. P., it determined that it was in D. M. P.'s best interest for the Petersons to adopt her. We cannot say that the trial court abused its discretion in doing so.

3. The Albrights contend that the trial court erred in not applying a presumption that they were entitled to adopt D. M. P. because her biological father never legitimated her and had surrendered his parental rights to her. Relying on *Lucas v. Smith*, 201 Ga. 834 (41 SE2d 527) (1947), they urge that they had the strongest "legal claim" to her. Because *Lucas* involved custody, not adoption, that case is not controlling. Further, we determined in Division 2, supra, that the evidence showed that the trial court did not err.

*Judgment affirmed. Blackburn, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 3, 2000 —
RECONSIDERATION DENIED DECEMBER 8, 2000 — ▮▮▮▮▮▮▮

*Westmoreland, Patterson & Moseley, Bradley G. Pyles, William J. Camp*, for appellants.
*Herbert L. Wells*, for appellees.

