A09A0907. BLOUNT et al v. KNIGHTON et al.
(680 SE2d 522)

JOHNSON, Presiding Judge.

Teresa Blount and Curtis Blount, the maternal great aunt and uncle of four-year-old T. B., appeal the trial court's grant of a petition to adopt in favor of Becky Knighton and Franklin Knighton. The Blounts contend the trial court erred in denying their motion to dismiss the adoption petition because it did not meet the statutory requirements. They also contend the trial court erred in granting the adoption petition because it was not in the best interest of T. B. The arguments are without merit, so we affirm the decision of the trial court.

In an adoption action, the trial judge sits as both the judge and jury; he decides the weight and credibility of the evidence and is vested with a broad range of legal discretion.[1] The trial judge considers whether each living parent has surrendered or has terminated his rights to the child, whether the adopting parents are capable of assuming responsibility for the care, supervision, training, and education of the child, whether the child is suitable for adoption in a private family home, and whether the adoption requested is in

---

[1] See *Madison v. Barnett*, 268 Ga. App. 348, 350-351 (2) (601 SE2d 704) (2004).

the best interest of the child.[2] We construe the evidence to uphold the trial court's findings and judgment, and we affirm if there is any evidence to support the findings.[3]

Viewed in that light, the evidence shows that T. B. was born on July 6, 2004 to 15-year-old Vicki Blount. Over the next few years, Vicki Blount "was involved with DFCS in Putnam, Baldwin, and Washington Counties as a result of her constant moving, and the child was placed with Teresa Blount and Becky Knighton several times as a safety resource in an effort to allow the mother to find stability." On September 27, 2006, the Juvenile Court of Washington County awarded temporary legal custody of T. B. to the Washington County Department of Family and Children Services ("DFACS"). The court noted:

> The mother recently gave guardianship of the child to Teresa Blount in February 2006 after becoming upset with Becky Knighton for not giving her all of the monthly [social security] check.[4] In April 2006, the mother attempted to dissolve the guardianship of Teresa Blount over the child. . . . In the case at Bar, the mother stated that she wished to dissolve the guardianship of Teresa Blount and give guardianship to Becky Knighton.

In fact, prior to the court's order, Vicki Blount had surrendered her rights to the Knightons for the purposes of adoption. T. B., however, remained in the home of the Blounts as a relative placement.

On December 11, 2006, the Knightons filed a petition for adoption. The Blounts filed a motion to intervene in the adoption on January 25, 2007, which was granted, but the Blounts did not file any subsequent pleadings requesting any relief until after the trial court granted the Knightons' petition to adopt.

1. The Blounts contend the trial court erred in denying their motion to dismiss the Knightons' adoption petition because the petition did not comply with Georgia statutory law. Specifically, the petition failed to contain a copy of the Knightons' marriage license, a properly completed background information form on T. B., a criminal background check by the Federal Bureau of Investigation ("FBI"), and an updated putative father registry check. According to the Blounts, because the Knightons' adoption petition failed to include these documents, the subsequent adoption was invalid. In addition, the Blounts contend the Knightons failed to give notice to

---

[2] Id. at 349 (1).

[3] See *Albright v. Peterson*, 247 Ga. App. 203, 204 (2) (539 SE2d 919) (2000).

[4] When Vicki Blount's father died, Becky Knighton became her legal guardian.

450

the putative father, also invalidating the adoption. We find no error requiring reversal.

Generally, the failure to attach or explain the absence of a statutorily mandated document when an adoption petition is filed requires reversal because the adoption statutes should be strictly construed; however, this rule has exceptions.[5] For example, an adoption will not be set aside because of technical flaws in the petition if, under the particular circumstances of the case, the missing document is shown to be immaterial.[6] The court should look to the purpose of the document to determine whether any defect in the petition due to its absence was harmless.[7]

(a) Although the Knightons' petition for adoption did not contain a copy of their marriage license pursuant to OCGA § 19-8-13 (a) (3) (G), the record shows that the marriage license was admitted into evidence at the final adoption hearing without any objection. There was never any question in this case as to the validity of the Knightons' marriage. The Knightons swore in their petition, amended petition, and at trial as to the fact of their marriage. Moreover, the actual marriage license was entered into evidence at trial. Under the circumstances, the Knightons' failure to attach the marriage license to their adoption petition was immaterial, and any defect in the petition due to its absence was harmless.

(b) Next, the Blounts allege that the adoption action should have been dismissed because the petition did not include a completely filled out Form 413 containing background information regarding T. B. pursuant to OCGA § 19-8-13 (a) (3) (H). However, the record shows that Becky Knighton, with the assistance of Vicki Blount, filled out the form and attached it to the Knightons' initial petition for adoption.

The Blounts also object to the form because the form does not name them as the aunt and uncle of the child. While the form does not list the Blounts as relatives, it does substantially comply with statutory requirements and does contain other significant information regarding the identities of the child's mother, grandmother and grandfather, as well as potential health concerns for future use by T. B. In addition, the Blounts were granted specific rights of visitation in the final adoption decree, so there is no concern that the child is unaware of the identity of his maternal aunt and uncle. We decline to set aside an otherwise valid adoption simply due to a technical deficiency in a required attachment where the deficiency is

[5] *McCurry v. Harding*, 270 Ga. App. 416, 418 (1) (a) (606 SE2d 639) (2004).
[6] Id.
[7] Id.

immaterial and otherwise harmless.[8]

(c) The Blounts allege the Knightons failed to submit a criminal background check conducted by the FBI pursuant to OCGA § 19-8-16 (d). The record shows that the Knightons attached to their original petition a criminal background check compiled on their behalf by the Baldwin County Sheriff's Department. During trial, the court directed the Knightons to submit their fingerprints for the purposes of an FBI background check. The Blounts acknowledge in their appellate brief that the Knightons followed the court's order, but argue that the Knightons failed to supplement or amend the record to include a copy of the FBI reports. However, the record shows that the FBI reports were filed with the trial court on February 23, 2009. These criminal background reports were subsequently transmitted to this Court.

(d) The Blounts argue that the mother's affidavit, executed on October 12, 2006, contained information about the putative father that the mother knew was false. Specifically, the mother knew at the time she signed the affidavit that Tony Griffin, who was alleged to be the father, had been excluded as the father by DNA evidence on February 1, 2005. The mother testified at trial that she had been dating Griffin for one and one-half months around the time of conception and believed he was the father. Once Griffin had been excluded as the biological father, the mother did not know who the father could be because she had engaged in sexual relations with a number of other men around the same time, whose names and phone numbers were unknown to her.

While the Knightons served Griffin with a copy of the original adoption petition, they amended the petition once they learned that Griffin was not the biological father. The record shows that on December 12, 2007, the Knightons filed an amended petition for adoption stating the following:

> The Mother's affidavit signed October 12, 2006, attached to the original petition filed December 11, 2006, identified Tony Lee Griffin as the biological Father who is not the legal Father. However, the Superior Court of Putnam County, Georgia issued a final order ... dated February 1, 2005, finding that paternity testing excluded Tony L. Griffin as the biological Father of the Child."

The Knightons further stated that they did not know the identity of the biological father or whether the biological father was, in fact, still alive.

---

[8] Id.

YALE LAW LIBRARY

452

The purpose of the mother's affidavit is to gather information to be used by DFACS in notifying and determining the rights of the *father*.[9] We will not invalidate a surrender of rights in which all other requirements of surrender have been met solely because of omissions or inaccuracies in an information-gathering device facilitating the agency's legal obligations as to the rights of the biological father.[10] In addition, any problem with the mother's affidavit in this case was cured by the amended petition correctly asserting that the biological father was unknown and by the mother's testimony of this fact at trial.

(e) The Blounts contend the Knightons failed to obtain a certificate from the putative father registry on or after the mother's surrender of parental rights pursuant to OCGA § 19-8-13 (h). This Code section requires that a petition for adoption include a certificate from the putative father registry indicating a search of the registry

> on or after the earliest of the following:
> (1) The date of the mother's surrender of parental rights;
> (2) The date of entry of the court order terminating the mother's parental rights;
> (3) The date of the mother's consent to adoption pursuant to Code Section 19-8-6; or
> (4) The date of the filing of the petition for adoption, in which case the certificate may be filed as an amendment to the petition for adoption.

Here, the Knightons attached to the original December 11, 2006 adoption petition the certification from a search conducted of the putative father registry dated November 8, 2006. This certificate indicates a search of the registry on or after the mother's initial surrender of rights on October 12, 2006. And the trial court found this surrender by the mother to be a valid surrender. Contrary to the Blounts' argument, there was no requirement that the Knightons conduct a later search of the registry after filing their amended petition containing the mother's second surrender of rights.[11]

(f) Finally, the Blounts argue that the Knightons failed to give notice to the biological or legal father. We find no error. No notice is

[9] See *Families First v. Gooden*, 211 Ga. App. 272, 274 (2) (439 SE2d 34) (1993).

[10] Id.

[11] See *Owens v. Worley*, 163 Ga. App. 488, 490 (3) (295 SE2d 199) (1982) (omission from petition may be cured by amendment because amendments relate back to the date the pleading was filed).

required to an unknown putative father.[12] Even so, the Knightons, out of an abundance of caution, served Griffin with a notice of the adoption petition and published notice of the amended petition for three consecutive weeks in the legal organ of Baldwin County, where the adoption was filed.

2. The Blounts contend the trial court erred in finding that adoption by the Knightons was in the best interest of T. B. Our standard of review on appeal is to ascertain if there is any evidence to support the trial court's finding that the adoption is in the child's best interest, and to affirm the trial court's decision if there is any evidence to support it.[13] The trial court has very broad discretion in this area.[14]

Here, the Blounts' attorney conceded that the Knightons were capable of caring for T. B. and would provide him with a good, loving home, but she argued that T. B. should remain with his relatives. A DFACS representative also testified that there had not been any problems during the Knightons' visitations with T. B. and that the Knightons would provide a good home for T. B. However, the representative believed T. B. would be best served by remaining in the Blounts' care since he had been there for a while. Although OCGA § 19-8-18 (a) (1) requires the trial court to "give consideration" to the DFACS investigative report or other investigating agency, the statute "does not require that the court follow or adopt any conclusions in the report."[15]

The trial court found that both the Knightons and the Blounts would provide a stable and good environment for T. B., but the judge determined that it was in T. B.'s best interest for the Knightons to adopt him. The evidence showed that Teresa Blount was not working, that she had previously been charged with making terroristic threats and entered a no contest plea to disorderly conduct, and that the Blounts had received assistance from family members and the church for a number of months. The evidence further showed that the Knightons have maintained a steady relationship with T. B. during his entire life, have exercised opportunities to visit T. B. when he was not in their care, and continue to offer a good home and permanency. In addition, Vicki Blount twice surrendered her rights so that T. B. could be adopted by the Knightons, and T. B. would continue to be a ward of the state if the court denied the adoption petition. Given the evidence, we cannot say that the trial court

---

[12] OCGA § 19-8-12 (b).
[13] See *McCurry*, supra at 420 (4).
[14] Id.
[15] *Bragg v. State of Ga.*, 226 Ga. App. 588, 590 (2) (487 SE2d 137) (1997).

abused its discretion in granting the Knightons' petition to adopt T. B.[16]

*Judgment affirmed. Ellington and Mikell, JJ., concur.*

DECIDED JUNE 18, 2009.

*Amy M. Leverette*, for appellants.
Becky Knighton, *pro se*.

---

[16] See *Albright*, supra at 205 (2).