## A04A1451. McCURRY v. HARDING.
(606 SE2d 639)

BARNES, Judge.

This is an appeal from the grant of a stepparent adoption. The trial court entered a decree allowing Wesley Harding to adopt the three natural children of Christopher McCurry. In granting the petition for adoption the trial court found that McCurry had failed to communicate with or support the three minor children for a period of at least one year, terminated his parental rights, and held that the adoption was in the best interest of the children. McCurry appeals, contending that the adoption petition did not comply with Georgia statutory law, and that the trial court erred in terminating his parental rights, in finding that his consent was not a prerequisite to the adoption petition, in finding that the adoption was in the best interest of the children, and in ruling on a finding that was based on perjured testimony. Upon review, we discern no error and affirm.

The evidence shows that McCurry and his wife were divorced on February 11, 1999, while living in Alabama. The wife was awarded custody of the three minor children, and McCurry was ordered to pay $91.08 in child support per week. The wife testified that on several occasions McCurry refused to abide by the terms of the divorce decree by not returning the children promptly after visitations and by not paying the court-ordered child support. She also expressed concern about the children's safety when they were with McCurry, and testified that McCurry would drive around with the three-year-old in his lap, rather than in a car seat. She also said that on one occasion after visiting McCurry, the oldest daughter was upset, had an undisclosed medical problem, and refused to go back. The mother filed a petition for suspension of visitation in October 2000.

Shortly thereafter a hearing was held on the motion, and also on a petition from the Department of Human Resources about McCurry's nonpayment of child support. McCurry did not attend the hearing. The lower court suspended McCurry's visitation until "he presents himself in Court to answer the allegation relative to the request for suspension of visitation and to present to the Court good cause for his failure to pay child support in a timely fashion." Another hearing

was rescheduled for November 2000. McCurry once again did not appear, and the court issued an arrest warrant for him.

The mother and Harding married in May 2000. From October 2000 until September 2003, the mother did not have an address for McCurry. She testified that McCurry would not give her his address, but that she knew he had moved to Tennessee and lived in Chattanooga. Between October 2000 and September 2003, when the adoption petition was filed, McCurry did not voluntarily provide any child support to the children. As of the date of the hearing on the adoption petition, McCurry was in arrears over $22,000 for the nonpayment of child support.

"[I]n matters of adoption the superior court has a very broad discretion which will not be controlled by the appellate courts except in cases of plain abuse." (Citation and punctuation omitted.) *Bateman v. Futch*, 232 Ga. App. 271, 274 (2) (501 SE2d 615) (1998).

1. (a) McCurry argues that the adoption petition did not comply with Georgia statutory law. He contends that the petition originated under the provisions of OCGA § 19-8-6 (a) (1),[1] because "the biological parents of the children were married, and then divorced, but are still living," and thus, the mother was required to include an affidavit with the adoption petition that complied with the requirements of OCGA § 19-8-26. He asserts that because the mother did not attach the affidavit, the adoption was invalid.

Harding contends that the petition was not filed under OCGA § 19-8-6, but rather was filed in accord with OCGA §§ 19-8-13 (a) (7) and 19-8-10 (b), which provide that parental rights need not be surrendered before an adoption petition is filed if the court determines the children have been abandoned by that parent. Thus, he argues, the affidavit required by OCGA § 19-8-6 was "unnecessary and irrelevant."

OCGA § 19-8-6 controls stepparent adoptions. *Spires v. Tarleton*, 225 Ga. App. 117 (483 SE2d 337) (1997). And, contrary to Harding's contention otherwise, under OCGA § 19-8-6 (g), "[w]henever the legal mother . . . consents to the adoption of her child by her spouse pursuant to this Code section, she shall execute an affidavit meeting

---

[1] Except as otherwise authorized in this chapter: [a] child whose legal father and legal mother are both living but are not still married to each other may be adopted by the spouse of either parent only when the other parent voluntarily and in writing surrenders all of his rights to the child to that spouse for the purpose of enabling that spouse to adopt the child and the other parent consents to the adoption and, where there is any guardian of that child, each such guardian has voluntarily and in writing surrendered to such spouse all of his rights to the child for purposes of such adoption.

the requirements of subsection (h) of Code Section 19-8-26." Subparagraphs (h) (1) (G) and (H) of OCGA § 19-8-26 state that the affidavit shall describe, among other things, whether the father lived with the children, whether he contributed to their support, and all financial assistance he provided.

> As a general rule, the failure to attach or explain the absence of a statutorily mandated document when the petition is filed requires reversal because the adoption statutes should be strictly construed and meticulously followed. However, this rule has exceptions. We have held that an adoption will not be set aside because of technical flaws in the petition under certain circumstances. For example, if, under the particular facts of the case, the missing document or portion thereof is shown to be immaterial, we will not upset an otherwise valid . . . adoption. The purpose of the mother's affidavit, as stated on the form itself, is to gather information to be used by the [court] in notifying and determining the rights of the father. It does not purport to protect or otherwise affect the rights of the mother. In this case, the father's identity was known. Paternity was never disputed. The father voluntarily participated in the adoption proceeding, [and] received proper notice of the petition. . . .

(Citations and punctuation omitted.) *Mabou v. Eller*, 232 Ga. App. 635, 638 (2) (c) (502 SE2d 760) (1998). Compare *Spires v. Tarleton*, supra, 225 Ga. App. 117.

We find that under the facts of this case, as in *Mabou*, "the mother's affidavit was immaterial and any defect in the petition due to its absence was harmless." *Mabou v. Eller*, supra, 232 Ga. App. at 638. The facts before us are unlike the "unique set of circumstances" we found in *Coleman v. Grimes*, 250 Ga. App. 880-881 (553 SE2d 185) (2001), in which we reversed the termination of a father's parental rights and decree of adoption. In that case, the mother's affidavit contained "*knowingly* false statements purporting to address the material issues of [the father's] lack of parental involvement," and thus the affidavit did not substantially comply with the requirements of OCGA §§ 19-8-6 (g) and 19-8-26 (h) so as to sustain a judgment terminating the father's parental rights based on it. (Emphasis in original.) Id. at 891 (2). The termination and adoption in that case were set aside for additional reasons, none of which apply to this case.

(b) McCurry also argues that the adoption petition was defective because forms containing background information on the children were not attached to the petition as required by OCGA § 19-8-13 (a) (4) (G). McCurry does not argue that incorrect forms were filed, but

argues that background forms were not filed, an argument clearly belied by the evidence. Our review of the record discloses that a form entitled "Background Information for Non-State Agency Child" was completed for each child and attached to the petition. Thus, this argument is meritless.

2. McCurry argues that the trial court erred in finding that his consent was not required for the adoption petition. While he is correct that stepparent adoptions are brought under OCGA § 19-8-6, contrary to his assertion, his consent is not required.

OCGA § 19-8-6 (a) (1) provides for a stepparent adoption in which the natural parent consents, but the statute notes that the provision applies "except as otherwise authorized" in the adoption statute. A stepparent adoption is otherwise authorized under OCGA § 19-8-10 (b), without the natural parent's surrender,

> if that parent, for a period of one year or longer immediately prior to the filing of the petition for adoption, without justifiable cause, has significantly failed . . . [t]o communicate or to make a bona fide attempt to communicate with that child in a meaningful, supportive, parental manner; or [significantly failed] to provide for the care and support of that child as required by law or judicial decree.

Accordingly, under this Code section, if the trial court found that McCurry failed to communicate with or provide for the care and support of his children for one year or longer, then McCurry's consent was not required. In this case, the trial court made such a finding of fact, and further found that McCurry had abandoned his children under the laws of the State of Georgia. The court then made the conclusion of law that, because McCurry unjustifiably failed to communicate with or support his children for a period longer than one year before Harding filed the petition, McCurry's parental rights were terminated. Therefore, the trial court did not err in approving the adoption without McCurry's consent.

3. McCurry argues that the termination of his parental rights violated due process because he had no notice that the court hearing was for that purpose. First, McCurry waived that argument by failing to raise it in the trial court. *In the Interest of B. A. S.*, 254 Ga. App. 430, 434 (2) (563 SE2d 141) (2002).

Second, the record established that McCurry had notice that his parental rights might be terminated. He was personally served with the adoption petition. The summons attached to the petition stated that if McCurry failed to answer the petition that judgment by default would be entered against him, granting Harding's petition for adoption. The petition stated that McCurry's surrender of rights was not

a prerequisite for filing because he had failed to communicate with or support his children for more than three years before the petition was filed. McCurry filed an answer to the petition, denying those allegations. Finally, in opening statements before the hearing Harding stated that the evidence would show that the court may terminate McCurry's parental rights, and McCurry asked that the court deny the petition and allow him "to continue with his parental rights."

Even if McCurry had not waived his right to argue a due process violation, the evidence showed he had ample notice that his parental rights were under consideration at the adoption hearing. "The grant of an adoption effectually relieves the natural parents of all parental rights and terminates all legal relationships between the adopted child and his natural parents." (Punctuation and footnote omitted.) *Hall v. Coleman*, 264 Ga. App. 650, 654 (2) (592 SE2d 120) (2003). Therefore, we find no error.

4. McCurry next contends that the trial court erred in finding that the adoption was in the best interest of the children. The test on appeal is that "[i]f there is any evidence to support the trial court's finding that the adoption is in the child's best interest, such finding will be affirmed." (Citations omitted.) *Bateman v. Futch*, supra, 232 Ga. App. at 274 (2). In this area the court has very broad discretion. Id.

Here, the evidence showed that adoption was in the children's best interest. The children referred to Harding as "Dad," and have a close, loving relationship with him. Moreover, the oldest daughter consented to the adoption, and the youngest child, who is six, had last seen McCurry when she was three. In the three years that McCurry failed to support his children, Harding has worked two jobs and provided for their needs, including health insurance, and other financial support.

Although McCurry argues that there is no evidence that he harmed his children, there is also no evidence he made any attempts to contact or support his children for three years before Harding filed the adoption petition. McCurry's mother testified that the children's mother prevented McCurry from seeing the children, yet McCurry also did not appear for two court hearings regarding his failure to pay child support, which would have given him an opportunity to address his concerns about visitation.

We reiterate that the trial court has very broad discretion in this area, and as there was evidence supporting the court's finding regarding the child's best interest, we discern no abuse of discretion.

5. McCurry last enumerates as error that the trial court based its ruling on a perjured factual finding. McCurry argues that his ex-wife lied when she testified that no child support payments had been made from October 2000 until the petition was filed, and maintains that

documentary evidence shows otherwise. Specifically, he argues that, contrary to the mother's testimony, the court-ordered payment summary from the Child Support Division of the State of Alabama shows that he made several support payments before the adoption petition was filed.

A review of the record reveals that the trial court conducted a full and complete hearing on the petition. The court heard testimony from the children's mother, McCurry, and McCurry's mother regarding the timing of the support payments. McCurry had the opportunity to address any alleged false testimony by cross-examining the children's mother about discrepancies between her testimony and the payment summary. He did not do so. Further, this exhibit, which McCurry later reviewed during his testimony, was not put into evidence at the hearing but was retained by counsel.

Although McCurry subsequently submitted with his motion to set aside the adoption a document from the Alabama Department of Human Resources, Child Support Division of Chambers County, which appears to describe his child support payments, we are unable to ascertain the months the payments were made. That being so, the document does not substantiate McCurry's claims of perjury.

Moreover, pretermitting whether the mother had, in fact, received support payments during the month before Harding filed the adoption petition, it is undisputed that from 2000 to some period in September 2003, McCurry made no support payments for his children. At the hearing, McCurry testified that he made a support payment on September 2, 2003, two payments on September 22, 2003, five payments in October 2003, and had since maintained his child support payments. The adoption petition was filed on September 24, 2003. This reflects only three support payments in the three years before Harding filed the petition.

As we have previously held, "[i]n determining whether 'significant' steps have been taken with regard to support and communication, 'sporadic and de minimis' efforts do not require the court to find that there have been significant steps." (Citations omitted.) *In re J. S. J.*, 180 Ga. App. 873, 875 (3) (350 SE2d 843) (1986).

Accordingly, we find no merit in McCurry's claim that the trial court's ruling was based on perjured testimony. Thus, clear and convincing evidence supported the trial court's finding that McCurry had failed significantly to provide child support for the year before the adoption petition was filed, and its finding that the adoption is in the best interest of the children. Accord *Curde v. Matson*, 190 Ga. App. 782 (380 SE2d 71) (1989).

*Judgment affirmed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 12, 2004 — 

*Anthony M. Zezima*, for appellant.

*Key, McCain & Gordy, R. Michael Key, Virginia L. Zachry*, for appellee.