# FOURTH DIVISION
## DOYLE, P. J.,
## MCFADDEN and BOGGS, JJ.

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 18, 2014**

# In the Court of Appeals of Georgia

A13A1876. SAULS v. ATCHISON et al.            DO-095

DOYLE, Presiding Judge.

William Christopher Sauls appeals from a judgment of the Baldwin Superior Court terminating his parental rights to his daughter, S. M. S., and granting a decree of adoption to Sauls's mother and stepfather, Vanessa V. Atchison and James H. Atchison, Jr. We affirm for the reasons that follow.

> On appeal from an order terminating parental rights based on an adoption petition, we construe the evidence favorably to the trial court's ruling and determine whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost. We do not weigh the evidence or assess witness credibility, but defer to the trial court's factual findings and affirm unless this standard is not met.[1]

---

[1] (Punctuation omitted.) *Dell v. Dell*, 324 Ga. App. 297 (748 SE2d 703) (2013).

So viewed, the evidence shows that Sauls's daughter, S. M. S., was born in 2005. Sauls and S. M. S.'s mother never married.[2] The child lived with both parents in Warner Robins, Georgia, until they separated in 2006. S. M. S. lived with her mother immediately following the separation, and Sauls had weekend visitation with her. In 2007, at the request of the parents, the Atchisons took custody of S. M. S. on the condition that they get temporary letters of guardianship, which were issued by the Baldwin County Probate Court in February 2007. In June 2007, the mother petitioned the probate court to terminate the guardianship, but the court denied the petition after Sauls testified in favor of the Atchisons.

In 2010, the Atchisons filed a petition for adoption pursuant to OCGA § 19-8-10, seeking therein to terminate the parental rights of both parents. On August 12, 2011, following a hearing, the trial court entered orders granting the adoption petition and terminating Sauls's and the mother's parental rights. Sauls appealed to this Court,[3] arguing that service of process was insufficient, the trial court's order was insufficient, and the trial court erred by terminating his parental rights and granting

---

[2] Sauls signed papers acknowledging paternity on the day S. M. S. was born.

[3] The mother did not appeal the trial court's orders.

the adoption. We affirmed the trial court's denial of Sauls's motion to dismiss based on insufficient service of process,[4] but we remanded the "case to the trial court with the direction that it enter a new decree with specific findings of fact and conclusions of law pursuant to OCGA § 19-8-18 (b)."[5]

On August 24, 2012, following the remand, the trial court entered a detailed order, which contained specific findings of fact, terminating the parental rights of Sauls and the mother and granting the Atchisons' adoption petition.[6] In the order, the trial court found that (1) Sauls failed for over a year, without justifiable cause, to communicate or attempt to communicate with S. M. S. in a meaningful, supportive, or parental manner; (2) Sauls significantly failed to financially support the child despite his ability to do so; and (3) adoption by the Atchisons would be in S. M. S.'s best interest. On October 5, 2012, the trial court entered an adoption decree in favor of the Atchisons. On November 5, 2012, Sauls filed a motion for new trial with regard

---

[4] See *Sauls v. Atchison*, 316 Ga. App. 792, 793 (1) (730 SE2d 459) (2012).

[5] Id. at 795-796 (2). "We . . . [did] not reach Sauls'[s] contentions with regard to the termination and adoption, and we express[ed] no opinion upon the merits of those contentions." Id. at 796 (2).

[6] The order was filed August 24, 2012, but was signed on August 13, 2012, "nunc pro tunc July 26, 2011."

3

to both the August 2012 order and the October 2012 order; he filed an amended motion for new trial on February 7, 2013.[7] On February 15, 2013, the trial court entered an order denying Sauls's motion for new trial. On March 14, 2014, Sauls filed a notice of appeal.

1. As an initial matter, we address the Atchisons' assertion that this Court lacks jurisdiction. The Atchisons contend that Sauls's notice of appeal was untimely as to the order terminating his parental rights and that a discretionary appeal was required. We disagree.

Following the remand in this case, the trial court terminated Sauls's parental rights by order entered on August 24, 2012. Pursuant to OCGA § 5-6-35 (a) (12), "[a]ppeals from orders terminating parental rights" require an application for appeal. OCGA § 5-6-34 (a), however, provides in relevant part that parties may directly appeal "[a]ll final judgments, that is to say, where the case is no longer pending in the court below. . . ."

> Both OCGA §[§] 5-6-34 (a) and 5-6-35 (a) are involved when, as here, a trial court issues a judgment in a case covered by the direct appeal statute, but where the subject matter may also be covered under the discretionary appeal statute. Where both the direct and discretionary

---

[7] In the amended motion, Sauls withdrew his constitutional arguments.

4

appeal statutes are implicated, it is always the underlying subject matter that will control whether the appeal must be brought pursuant to OCGA § 5-6-34 or OCGA § 5-6-35.[8]

Here, Sauls's brief contains enumerations of error addressing the order terminating his parental rights and the final decree of adoption. Under these circumstances, Sauls was not required to file a discretionary application.[9]

We further conclude that Sauls's motion for new trial was timely. Pursuant to OCGA § 5-5-40 (a), "[a]ll motions for new trial, except in extraordinary cases, shall be made within 30 days of the entry of the judgment on the verdict or entry of the judgment where the case was tried without a jury." Here, the final decree of adoption was entered on Monday, October 5, 2012, and therefore, his subsequent motion for new trial filed on November 5, 2012, was timely.

---

[8] (Punctuation omitted.) *Numanovic v. Jones*, 321 Ga. App. 763, 764 (743 SE2d 450) (2013), quoting *Ferguson v. Composite State Bd. of Med. Examiners*, 275 Ga. 255, 256-257 (1) (564 SE2d 715) (2002).

[9] Compare *Numanovic*, 321 Ga. App. at 764 (father, who sought to appeal the trial court's order denying legitimation and terminating his parental rights, was required to follow the discretionary appeal procedures set forth in OCGA § 5-6-35 (a) because although the trial court also granted the petitioners' adoption petition, the father did not enumerate as error the adoption).

2. Sauls argues that the trial court erred by terminating his parental rights. We disagree.

Pursuant to OCGA § 19-8-13 (b), a grandparent's adoption may be granted without a biological parent's consent

> if that parent, for a period of one year or longer immediately prior to the filing of the petition for adoption, without justifiable cause, has significantly failed: (1) [t]o communicate or to make a bona fide attempt to communicate with that child in a meaningful, supportive, parental manner; or (2) [t]o provide for the care and support of that child as required by law or judicial decree, and the court is of the opinion that the adoption is for the best interests of that child.

(a) Sauls argues that the trial court erred by terminating his parental rights on the basis that he failed for over a year, without justifiable cause, to significantly communicate or attempt to communicate with S. M. S. in a meaningful, supportive, parental manner. This enumeration is without merit.

At the hearing, Vanessa Atchison testified that after the probate court issued the letters of guardianship, Sauls initially traveled from Warner Robins to Milledgeville every weekend to visit S. M. S., although he never exercised his right to overnight visitation. After the probate court denied the mother's request to terminate the guardianship in August 2007, Sauls's visitation became less frequent.

6

Sauls did not contact his daughter at Christmas in 2007, 2008, or 2009, and he failed to contact her on her third, fourth, and fifth birthdays. Sauls saw S. M. S. once in 2008 at the Atchisons' June anniversary party. In 2009, he saw his daughter in the spring when he attended her preschool graduation ceremony and the dinner afterwards, and he went to the Atchisons' home the following day after S. M. S.'s ballet recital, although he declined to attend the recital.

On appeal, Sauls argues that his mother, Vanessa, "thwarted" his numerous attempts to contact S. M. S., relying on his cell phone bills from May 2009, June 2009, and June 2010. The records, however, only cover three months out of the approximate two and a half year period between the petition and the hearing, and they do not require reversal, given Vanessa's testimony that she offered him numerous opportunities to visit with S. M. S., but he failed to do so unless the Atchisons brought her to Macon, citing work conflicts.[10] The trial court specifically stated in its order that it found incredible Sauls's testimony that the Atchisons turned on him after he testified in their favor, and it found credible Vanessa's testimony that Sauls became angry at her and her family over a loss of inheritance. The trial court also

_____

[10] The Atchisons did bring S. M. S. to Macon to see her father on multiple occasions.

indicated that Sauls's testimony was impeached by evidence that he filed in Houston County a petition for legitimation and custody of S. M. S., falsely swearing that the child was a resident of Houston County at the time and indicating therein that he had provided financial support for her and spent quality time with her. The court also noted that Sauls failed to inform the Houston County court that S. M. S. had been living with the Atchisons under letters of guardianship.

"[I]t was for the trial court, and not for the appellate court, to assess the credibility of the witnesses and resolve contested factual issues."[11] "The trial court . . . is vested with significant discretion in making the determination as to whether the parent's [failure to communicate with the child] is excusable."[12] In light of the evidence in the record to support the trial court's finding that Sauls failed for over a year, without justifiable cause, to significantly communicate or attempt to communicate with S. M. S. in a meaningful, supportive, parental manner, we find no error in the trial court's order terminating Sauls's parental rights.[13]

---

[11] (Punctuation omitted.) *Johnson v. Taylor*, 292 Ga. App. 354, 357 (1) (665 SE2d 49) (2008).

[12] (Punctuation omitted.) Id.

[13] See id.

(b) OCGA § 19-8-10 (b) provides two alternative bases for granting an adoption petition without parental consent, and "we may affirm based on the evidence supporting a finding under one subsection, even if the trial court made findings under both."[14] Given our decision in Division 2 (a), therefore, "we need not address whether [Sauls] significantly failed, without justifiable cause, to support [S. M. S.] for more than one year."[15]

3. Sauls also argues that the trial court erred by granting the Atchisons' adoption petition because they failed to meet their burden of showing that the termination was warranted.[16] Given our holding in Division 1 (a) that the trial court did not err by terminating Sauls's parental rights, this enumeration is without merit.

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

[14] Id. at 358 (2).

[15] Id.

[16] Sauls does not argue that adoption is not in S. M. S.'s best interest.

9