**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 11, 2018**

# In the Court of Appeals of Georgia

A18A0353. STEELE v. STEELE.

BARNES, Presiding Judge.

Stephanie Steele ("biological mother") appeals a judgment that, pursuant to OCGA § 19-8-10 (b), terminated her parental rights to her biological child and granted the adoption petition of the child's stepmother, Sara Steele ("adoptive mother"). The biological mother contends that the trial court erred by failing to inform her of her right to counsel, engaging in ex parte communications, failing to make express findings of fact, and entering judgment against her on insufficient evidence. Because the biological mother has failed to demonstrate any reversible error, we affirm.

The record reflects that the child was born in wedlock. When her parents divorced on April 21, 2011, she was three years old. The father was awarded physical

custody of the child, as well as final decision-making authority. The biological mother was granted visitation that included every other weekend and alternating major holidays; she also was ordered to pay $245 as monthly child support.[1] Each parent was granted telephone contact with the child when the child was with the other parent.

In 2012, the father married Sara Steele. And about four years later, on March 15, 2016, she filed petitions under Georgia's Adoption Chapter[2] seeking to terminate the parental rights of the biological mother and to adopt the child. The adoption petition was accompanied by the father's sworn consent.

Generally, a stepparent may adopt his or her spouse's child only if the parent whose rights will terminate with the adoption "voluntarily and in writing surrenders all of his [or her] rights to the child to [the stepparent] for the purpose of enabling [the stepparent] to adopt the child[.]" OCGA § 19-8-6 (a) (1); see *Ray v. Hann*, 323 Ga. App. 45, 48 (2) (746 SE2d 600) (2013). But if that parent refuses to surrender his or her parental rights, OCGA § 19-8-10 (b) provides that the court may nevertheless

---

[1] The biological mother received a credit on child support in an amount that paid what was owed until June or July 2012.

[2] See OCGA § 19-8-1 et seq.

terminate the biological parent's rights and grant the stepparent's petition to adopt the child where the trial court finds that the parent,

> for a period of one year or longer immediately prior to the filing of the petition for adoption, without justifiable cause, has significantly failed: (1) To communicate or to make a bona fide attempt to communicate with that child in a meaningful, supportive, parental manner; or (2) To provide for the care and support of that child as required by law or judicial decree[.]

OCGA § 19-8-10 (b) (1). See *Ray*, 323 Ga. App. at 48-49 (2). "It is the petitioner['s] burden to prove that termination of the parental rights is warranted, including the lack of justifiable cause." (Citation and punctuation omitted.) *Ray*, 323 Ga. App. at 49 (2). If the petitioner meets that burden of proof, then the court must also determine whether the proposed adoption is in the best interest of the child. OCGA § 19-8-10 (b). See *Ray*, 323 Ga. App. at 49 (2).

In the instant case, given the adoptive mother's petitions, the trial court convened a series of hearings. Notice was sent to the parties that on June 29, 2016, a hearing would be held on the termination petition; the petition alleged, inter alia, that the biological mother had been using methamphetamine; that her last physical contact with the child had been in mid-2014; that her last telephone contact with the

3

child had been in December 2014; and that the biological mother had failed to provide court-ordered support for the child.

When that hearing convened as scheduled ("Termination Hearing"), the child was 8 years old. The biological mother had not filed any response in the case, but she appeared pro se at the hearing and expressed opposition to the petitions. When called to the stand by the adoptive mother's counsel, the biological mother acknowledged that as part of the divorce decree, she was court-ordered to pay monthly child support, but that she had not done so.[3] She recounted that in early 2012, she began using methamphetamine. And since 2013, she further recounted, she had not been "legally" employed; as she explained at the hearing, "I was work – I was on the streets." She recalled that during that time, she was sometimes "staying at motels," but otherwise was "homeless on the streets."

In August 2014, the biological mother testified, her visitation with her child was modified to require supervision. But since June 2014, the biological mother admitted, she had not exercised any visitation rights. She further explained that she had not tried to contact her child because most of the time, "I was either – high or intoxicated – and I didn't want to call her when I was – in that state." In November

---

[3] See, however, note 1, supra.

2015, she was arrested and jailed until late January 2016; the charges stemmed from violating probation (relating to June 2015 offenses of DUI and giving false information). She relayed that, as part of the disposition of that case, she was ordered to undergo a year of rehabilitation. In January 2016, she moved to Missouri, where she entered a rehabilitation program. At the time of the Termination Hearing, she had completed about six months of the program, and she had begun volunteering at the facility's senior center. The biological mother was asked at the Termination Hearing, "[D]o you feel like you're in a position to be a mother to your child at this time?" She answered, "Not at this point, no." She stated that she was returning to Missouri later that day, but posited that she could "probably travel here to visit with her [child]."

At the end of the Termination Hearing, the trial judge announced that it planned to "take this part under consideration," then issue a written order, and thereafter "take the evidence as far as the petition for adoption is concerned."

In an order entered July 5, 2016 ("Interim Order"), the trial court determined that the adoptive mother had adduced at the Termination Hearing sufficient evidence to satisfy both OCGA § 19-8-10 (b) (1) and (2). The trial court set out its underlying findings: the biological mother had no contact with the child since 2014; this lack of contact was not caused by any circumstance beyond the biological mother's control,

5

but was due instead to her decision to partake in drugs, to live on the streets and in various motels, and to earn money through illegal activities. In addition, the court set forth that the biological mother had been court-ordered to pay child support, but admittedly had not done so; and that such failure was similarly without justifiable cause, ascertaining that the biological mother could have legally earned money and paid child support or that she could have paid child support out of her illegal earnings.[4] Finally, the court noted in the Interim Order that the Termination Hearing had not addressed the best interest of the child prong, and thus concluded its order with: "[T]he Court finds that there is clear and convincing evidence that the parental rights of [the biological mother] may be terminated but holds in abeyance a ruling until there is clear and convincing evidence as to what is the best interest of the child."

Counsel for the adoptive mother scheduled the next hearing, which convened on August 18, 2016 in the judge's chambers. The biological mother was not present (nor represented). Thereafter, the court entered judgment on October 18, 2016 that granted the adoptive mother's petitions for termination and adoption. It was later

---

[4] The court expressly took into account that the biological mother's initial credit went though mid-2012. See note 1, supra.

6

determined, however, that the biological mother had not been *notified* of the in-chambers hearings. The biological mother, who by that time had obtained counsel, filed a motion for recusal of the trial judge and a motion for new trial. Rulings thereon resulted in the trial judge being disqualified, the case transferred, the October 18, 2016 judgment vacated, and the case proceeding with a new evidentiary hearing on the issue of whether adoption was in the child's best interest.

When the court subsequently convened such hearing on June 29, 2017, the child's father took the stand and reported that the child had turned 9 years old, was going into the fourth grade, was excelling in school, and was enjoying playing sports and engaging in various hobbies. He testified that his wife was a great mother to the child, had supported the child, taken care of her, helped her with her homework, and had "just always been there." He asserted that he very much wanted his wife to adopt the child, that their home had three bedrooms and two bathrooms, that they had transportation, and that their family unit was financially stable.

The adoptive mother took the stand. She described how she and the child's father coordinated their respective full-time jobs to accommodate the child's needs and schedule. She detailed that she routinely helped the child with her homework, that the child was an honor-roll student, that the child loved school, that she had many

friends, and that she participated in dance and soccer. Her pediatric and dental visits showed that she was a healthy child; and she was getting ready for braces. The adoptive mother further expressed that because of their years together, she and the child enjoyed a strong bond.

The biological mother also took the stand. She updated the court that she had left the rehabilitation program after 10 months. She had not completed the program; nor had she obtained the sentencing court's permission to discontinue the rehabilitation. She further conceded that she had unsuccessfully tried rehabilitation about six times before. She had left the most recent rehabilitation facility, she explained, because she had become romantically involved with a man she had since married; she was pregnant and expecting to deliver the baby in about 6 weeks.

The biological mother reported that her probationary period would not end for another year, but that she remained in contact with her probation officer in Georgia. She reported that she had not used any drugs since leaving the rehabilitation program, and that her most recent drug tests had been negative. Additionally, she testified, her volunteering at the senior center had led to a part-time job there, where she was assisting the cooks and working with the meals-on-wheels program. When asked,

"[D]o you feel at this point that you're in a place where you'd be able to be productive in supporting [the child]?" She answered, "Yes."

Thereafter, on July 14, 2017, the trial court entered the judgment that is on appeal ("Final Order"). Therein, the court referenced the Interim Order, which found that the adoptive mother had adduced sufficient evidence that the biological mother had failed, as contemplated by OCGA § 19-8-10 (b) (1) and (2), to communicate or attempt to communicate with the child, and/or to provide for the child during the relevant period. In the Final Order, the court went on to recite that on June 29, 2017, it had conducted an evidentiary hearing on whether adoption would be in the child's best interest. The court then set out these findings of facts that it concluded amounted to clear and convincing evidence that granting the adoptive mother's petitions was in the child's best interest: the child's father and adoptive mother were married; they both worked and were financially stable; the child was in good health, doing well in school, and was well adjusted; the child had a strong bond with the adoptive mother; the adoptive mother was capable of providing the home that the child should have; and the adoptive mother was physically, mentally, financially, and in all other manners a fit and proper person to adopt the child. The court thus granted the

9

adoptive mother's petitions, thereby allowing her to adopt the child. This appeal ensued.

1. Pointing to her pro se participation in the Termination Hearing, the biological mother claims that she had been "unaware that she could request counsel as an indigent and would have most likely qualified had she known she needed to." She thus charges the trial court with error by failing to inform her of her "right to counsel" under OCGA § 15-11-262.

That Code section provides that "[a] child and any other party to a proceeding *under this article* [referring to the Termination of Parental Rights Article within the Juvenile Code] shall have the right to an attorney at all stages of the proceedings under this article." (Emphasis supplied.) OCGA § 15-11-262 (a). Additionally, that Code section provides that "[a] party other than a child shall be informed of his or her right to an attorney prior to the adjudication hearing and prior to any other hearing at which a party could be subjected to the loss of residual parental rights." OCGA § 15-11-262 (j). See generally *In the Interest of B. R. F.*, 299 Ga. 294, 294, n. 1. (788 SE2d 416) (2016) ("The appointment of counsel in a termination of parental rights proceeding is now codified at OCGA § 15-11-262 as part of the new Juvenile Code."); *Nix v. Dept. of Human Resources*, 236 Ga. 794, 795 (225 SE2d 306) (1976)

10

(noting that the Juvenile Code "provides that a parent is entitled to have counsel appointed to represent that parent in the [termination] proceeding if counsel cannot be employed without undue financial hardship").

However, in *Johnson v. Hauck*, 344 Ga. App. 848 (812 SE2d 303) (2018), this Court clarified that the right to counsel provided by OCGA § 15-11-262 does *not* extend to adoption proceedings pursued, as in the instant case, under OCGA § 19-8-10.

> Georgia's legislature has mandated that, in termination proceedings conducted under the Juvenile Code, an indigent parent has a statutory right to appointed counsel. See OCGA § 15-11-262 (a) ("A child and any other party to a proceeding under this article shall have the right to an attorney at all stages of the proceedings under this article."). . . [H]owever, that same statutory protection was not extended to an indigent parent in adoption proceedings conducted pursuant to OCGA § 19-8-10, despite the fact that those proceedings may ultimately end in the termination of his or her parental rights. See OCGA § 19-8-1 et seq.

(Citations omitted.) *Johnson*, 344 Ga. App. 854 (2).[5]

---

[5] Notably, OCGA § 19-8-10 (c) provides that a parent "may appear in the pending adoption action and show cause why such parent's rights to the child sought to be adopted in that action should not be terminated by that adoption"; but that statutory provision does *not* go on to establish the right to appointed counsel for an indigent parent in the manner of OCGA § 15-11-262 (relied upon by the biological mother).

11

As this Court further resolved in *Johnson*, "[t]he propriety of that legislative decision is not for this Court to decide. See generally *Commonwealth Investment Co. v. Frye*, 219 Ga. 498, 499 (134 SE2d 39) (1963) ("[T]he legislature, and not the courts, is empowered by the Constitution to decide public policy, and to implement that policy by enacting laws.")." *Johnson*, 344 Ga. App. at 854 (2). In light of the foregoing, the biological mother's contention – hinged on the applicability of OCGA § 15-11-262 – fails. "Since the adoption statutes do not require the appointing of an attorney for the [parent], the trial court did not err in failing to [advise the biological mother as to any rights to be] appoint[ed] an attorney pursuant to [OCGA § 15-11-262]." *Arrington v. Hand*, 193 Ga. App. 457, 458 (4) (388 SE2d 52) (1989).[6]

2. The biological mother maintains that the trial judge engaged in ex parte communications during that in-chambers hearing (after which that judge entered judgment purportedly granting the adoptive mother's petitions for termination and adoption). The biological mother cites that she was not given notice of that hearing

---

[6] Accord *In the Interest of B. R. F.*, 299 Ga. at 297 ("The termination of parental rights is a civil matter. Civil litigants typically do not enjoy a constitutional right to counsel.") (citations omitted); *DeKalb County v. Adams*, 272 Ga. 401, 403 (2) (529 SE2d 610) (2000) (reasoning that the trial court "was not authorized to appoint counsel to represent an indigent civil petitioner absent a statutory or constitutional provision to compel payment with State or county funds").

12

and was neither present nor represented. She asserts that she had a right to be afforded opportunity to be present at that hearing, because at that time, no order terminating her parental rights had been entered. But given remedial actions taken in response to the biological mother's motions for recusal and for new trial, we find no reversible error.

The record reveals that the biological mother raised this precise issue in a motion seeking recusal of that judge. When that recusal motion was assigned to a different judge, the assigned judge held a hearing, then entered an order finding these facts:

> [T]he trial judge [in question] relied upon the [adoptive mother's] attorney to notify the [biological mother] of the [in-chambers] hearing. Although the [adoptive mother's] attorney failed to do so, he immediately took corrective action when he realized the failure by informing the trial judge and having the hearing reset.

The assigned judge then ascertained that the failure to give notice was "inadvertent," but nevertheless ruled that the in-chambers hearing amounted to ex parte communications and that: "[T]he Motion to Recuse is hereby GRANTED and the trial judge is hereby Disqualified from presiding over any further proceedings in this

13

matter." Accordingly, the instant case was *transferred* to a different judge for decision on the biological mother's then pending motion for new trial.

At this point in the proceedings below, as mentioned above, the judge in question had already entered judgment on October 18, 2016 granting the adoptive mother's petitions. So in her motion for new trial, the biological mother asserted again that the in-chambers hearing had deprived her of her right to participate fairly in this matter; and she explicitly requested that the October 18, 2016 judgment be set aside and that she be granted a new trial. After a hearing, the trial court entered an order recapping that the biological mother's motion to recuse had been granted, that the initial presiding judge was then disqualified from presiding over any further proceedings, and that the case had accordingly been transferred. Turning to the merits of the new trial motion, the trial court: (i) vacated the October 18, 2016 judgment;[7] (ii) ruled that the Interim Order (entered prior to the in chambers hearing) was "not vacated and remains in effect"; and (iii) announced that a new evidentiary hearing on the best interest of the child would be held. And as the record confirms, such hearing was conducted on June 29, 2017, after which the trial court entered the Final Order.

---

[7] See *Prater v. State*, 222 Ga. App. 486, 488 (474 SE2d 684) (1996) ("In civil cases, orders improperly rendered without notice or the opportunity to be heard are 'nugatory' or a nullity.").

At this juncture, the biological mother contends that the handling of the ex parte communications did not go far enough, insisting that she was entitled to a new trial on all matters. The biological mother has not, however, supported her position with any authority mandating further relief; and we find none. The judge who ruled on the recusal motion ascertained that the failure to give notice to the biological mother had been inadvertent. Nevertheless, the judge in question was disqualified, the October 18, 2016 judgment (entered by that judge) was vacated, the case was transferred, and a new evidentiary hearing on the child's best interest was conducted (by a different judge). There is no dispute that the biological mother had ample notice of that hearing, and the record confirms that she appeared with counsel. While the Interim Order was left in effect, that order was entered *before* the in-chambers hearing; and that entry was made only after a full evidentiary hearing (Termination Hearing) at which the biological mother appeared and was afforded opportunity to be heard. Indeed, the Interim Order clearly specified the evidence underlying the determination that circumstances contemplated by OCGA § 19-8-10 (b) (1) and (2) had been demonstrated by the adoptive mother – and none of that evidence could have stemmed from the (subsequent) in-chambers hearing.

15

Given the foregoing, the biological mother has failed to show that the in-chambers hearing mandated relief beyond that granted by the rulings on motions for recusal and for new trial.[8] See *Ivey v. Ivey*, 264 Ga. 435, 438 (3) (445 SE2d 258) (1994) (rejecting for lack of harm a father's complaint that the trial court considered ex parte communications in ruling on custody, because although the trial court admittedly received numerous letters and telephone calls from both of the parents' friends and relatives regarding their respective parenting abilities, the trial court clearly specified the evidence that it relied upon in deciding custody, and there was "no indication in the record that the trial court gave any consideration to the ex parte communications"); *Arnau v. Arnau*, 207 Ga. App. 696, 697 (1) (429 SE2d 116) (1993) (reversing final order terminating father's visitation rights, where after trial on the merits of the mother's modification petition, the trial court held an ex parte meeting with a trial witness; yet leaving intact an interim consent order entered by

---

[8] The biological mother suggests in her brief that some other ex parte communication occurred. With respect to this suggestion, however, she has provided no relevant record cite, has given no indication as to what might have been said and under what circumstances, and has provided no legal analysis. To the extent the suggestion was intended to be a claim of error, it is deemed abandoned. See *Gardner v. State*, 289 Ga. App. 359, 359-360 (657 SE2d 288) (2008) (deeming as abandoned claims of error not supported by citation to the record, citation of authority or argument); Court of Appeals Rule 25 (c) (2).

that trial court); *Stinchcomb v. State*, 192 Ga. App. 8, 10 (383 SE2d 609) (1989) (explaining that any technical violation of the rule against ex parte communications did not constitute ground for reversal of convictions, where trial judge at issue stated that the complained-of ex parte communication with the assistant district attorney did not include any discussion on the merits or facts of the case). Cf. *State v. Wakefield*, 324 Ga. App. 587, 594-595 (2) (c) (751 SE2d 199 (2013) (explaining that defendants were entitled to new trial, where the presiding judge should have sua sponte recused from each trial as a result of his sexual relationship with the public defender representing either the defendants or their co-defendants).

3. Finally, the biological mother challenges the Final Order on grounds that: (a) the trial court failed to make express findings of fact; and (b) the evidence was insufficient.

(a) *Express findings of fact.* "In all cases wherein Code Section 19-8-10 is relied upon by any petitioner as a basis for the termination of parental rights, the court shall include in the decree of adoption appropriate findings of fact and conclusions of law relating to the applicability of Code Section 19-8-10." OCGA § 19-8-18 (b). Accordingly, a judgment terminating parental rights and granting an adoption petition "must present more than a mere legal conclusion which is not supported by

17

mandatory findings of fact, or a dry recitation the certain legal requirements have been met." *Sauls v. Atchison*, 316 Ga. App. 792, 795-796 (2) (730 SE2d 459) (2012) (concluding that the adoption decree lacked requisite findings of fact and conclusions of law, given the "absence of *any* specific findings of fact to support the trial court's recitation of the language of the statute") (emphasis in original); see *Maynard v. Brown*, 276 Ga. App. 229, 230-231 (622 SE2d 901) (2005) (explaining that the adoption decree lacked requisite findings of facts and conclusions of law, where "decree stat[ed] in pertinent part only that 'Petitioner has complied with all formalities of law, the biological father has had no contact with the minor child for at least two years, and that said proposed adoption is in the best interest of the child'").

Here, the biological mother makes a bare assertion that the Final Order failed to provide specific findings of facts as to the child's best interest.[9] But our review of the Final Order, which we have detailed above, confirms that this claim lacks merit. The biological mother has misplaced reliance on *Dell v. Dell*, 324 Ga. App. 297, 301 (1) (748 SE2d 703) (2013) (determining that the order terminating parental rights was

[9] The biological mother makes no claim that the trial court failed to set forth factual findings as to the other factors required by OCGA § 19-8-10 (b) (1) and/or (2).

18

facially deficient because, among other reasons, the trial court's conclusion that adoption was in the child's best interest "lacked particularity"). See generally *Ray v. Denton*, 278 Ga. App. 69, 72-73 (2) (628 SE2d 180) (2006) (rejecting contention that adoption decree was facially deficient, where the decree contained specific findings of fact relating to the contested element).

(b) *Sufficiency of the evidence*.

> On appeal of a decision terminating parental rights, we determine whether after viewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. We defer to the trial court's findings unless the clear and convincing standard is not met. In matters of adoption, the superior court has a very broad discretion which will not be controlled by the appellate courts except in cases of plain abuse.

(Citations and punctuation omitted.) *Ray*, 278 Ga. App. at 70 (1).

The biological mother claims that she presented evidence of her recovery, employment, and overall progress in reforming her life; she claims that there was no evidence that she would not be able to provide for the child sufficiently; and she claims that any evidence favorable to the adoptive mother showed merely that the

adoptive mother could provide the child with better financial, education, and moral advantages. These claims are unavailing.

Viewed in the light most favorable to the adoptive mother, the evidence authorized the trial court's determination that, within the meaning of OCGA § 19-8-10 (b), the biological mother had failed, for the requisite period and without justification, to: (1) communicate or attempt to communicate with the child; and/or (2) provide for the care and support of the child.

> Justifiable cause for the failure to pay child support may be found in situations where the parent has been unable to earn income due to incarceration, mental illness, mental incapacity, hospitalization, or other circumstances beyond his or her control. Each case must be decided on its own circumstances.

(Citation and punctuation omitted.) *In the Interest of Marks*, 300 Ga. App. 239, 245 (2) (b) (684 SE2d 364) (2009).

> It was for the trial court, and not for the appellate court, to assess the credibility of the witnesses and resolve contested factual issues. The trial court is vested with significant discretion in making the determination as to whether the parent's failure to communicate with the child [and/or failure to provide care and support] is excusable.

(Punctuation and footnotes omitted.) *Sauls*, 326 Ga. App. at 305 (2) (a).

"With regard to the best interest test in adoption cases, the trial court has very broad discretion with which this Court will not interfere except in cases of plain abuse." (Citation omitted.) *Ray*, 323 Ga. App. at 49 (2). "If there is any evidence to support the trial court's finding that the adoption is in the child's best interest, such finding will be affirmed." (Citation and punctuation omitted.) *McCurry v. Harding*, 270 Ga. App. 416, 420 (4) (606 SE2d 639) (2004). Despite the biological mother's characterization of the evidence, we are required to view the evidence in the light most favorable to the adoptive mother. Having done so, we find no abuse of discretion. See *Johnson v. Taylor*, 292 Ga. App. 354, 358-359 (3) (665 SE2d 49) (2008) (determining that evidence authorized finding that stepfather's adoption was in the child's best interest, where the biological father had "very limited" contact with the child and provided "virtually no financial or parental support" for the child for at least one year preceding the filing of the adoption petition, and where the stepfather had meanwhile been involved in the child's daily life by participating in his activities, teaching him skills, and generally functioning as a loving, concerned parent and the stepfather had financially supported the child and demonstrated his ability to do so in the future); *McCurry*, 270 Ga. App. at 420 (4) (determining that evidence authorized finding that stepfather's adoption was in the children's best interest, where

their biological father had failed to contact or support them for a period longer than one year prior to the filing of the adoption petition, and where the stepfather had meanwhile held jobs and provided for the children's financial needs and had also developed with the children a close, loving relationship).

The biological mother's challenge to the sufficiency of the evidence is without merit. See, e. g., *Ray*, 278 Ga. App. at 70-72 (1) (affirming judgment terminating a biological father's parental rights and allowing stepfather's adoption pursuant to OCGA § 19-8-10, where the biological father made no child support payments for the one year immediately before the filing of the petition, and, while the father was incarcerated for a part of that period, the support payments were sporadic even before the incarceration, and where the adoptive parent and the child were close and the adoptive parent was capable and willing to take parental responsibility of the child).

*Judgment affirmed. Reese, J., concurs fully. McMillian, J., concurs fully in Divisions1, 2, and 3 (b), and in  judgment only in Division 3 (a).*

**\*DIVISION 3 (a) OF THIS OPINION IS PHYSICAL PRECEDENT ONLY. SEE COURT OF APPEALS RULE 33.2 (a).**