**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 7, 2019**

# In the Court of Appeals of Georgia

A18A1475. PRICE v. GREHOFSKY.

MILLER, Presiding Judge.

Lauren Price appeals from the trial court's denial of her petition to adopt her stepdaughter, C. N. P., and to terminate the parental rights of the child's biological mother, Tamara Grehofsky. On appeal, Lauren argues that (1) the trial court erred in its application of the statute applicable to stepparent adoptions, OCGA § 19-8-10 (b); (2) the court's denial of her adoption petition violated equal protection under the federal and state constitutions; and (3) the court was overly deferential to Grehofsky's liberty interest in her child, despite the fact that the child's best interests are of equal constitutional weight. After a thorough review of the record, we conclude that there is a lack of clear and convincing evidence that would justify the termination of

Grehofsky's parental rights. Accordingly, the trial court properly denied Lauren's petition, and we affirm the trial court's order.

> In matters of adoption the [trial] court has a very broad discretion which will not be controlled by the appellate courts except in cases of plain abuse. Thus, if there is any evidence to support the judgment entered in an adoption proceeding, it must be affirmed by this [C]ourt. Furthermore, in cases concerning termination of parental rights, we review the evidence in the light most favorable to the appellee . . . and defer to the trial court in the area of factfinding.

(Citations and punctuation omitted.) *Thaggard v. Willard*, 285 Ga. App. 384, 385 (646 SE2d 479) (2007).

So viewed, the record shows that Grehofsky gave birth to C. N. P. in January 2007. When the child was born, Grehofsky was a drug addict, and the child was immediately removed from her care along with Grehofsky's two older children.[1] Six months later, C. N. P.'s biological father, Chris Price, legitimized the child and was awarded custody of her.

---

[1] The two older children were placed in the custody of Grehofsky's sister. Grehofsky later gave birth to two other children, and both of those children remained in her care.

2

In June 2008, Grehofsky was arrested on drug charges and entered drug court, where she met Lauren, who was also enrolled in the program. Lauren and Chris met in 2008 as well. From 2009 to the time of the filing of the adoption petition in 2016, Grehofsky attempted to contact Chris through calls and Facebook messages to discuss C. N. P. Except for one message in 2012 in which Chris told Grehofsky to stop contacting him and Lauren and told Grehofsky she would be hearing from his lawyer, Chris did not respond. Grehofsky also sent gifts and cards to C. N. P. from October 2008 until sometime in 2010. The letters were returned to Grehofsky, but the gifts were not.

Given her friendship with Lauren, Grehofsky would sometimes ask Lauren about C. N. P. and would seek her help communicating with Chris about the child. The two women also communicated through Facebook messaging, and in one message in 2010, Lauren stated that she wanted Grehofsky to be involved in C. N. P.'s life and had spoken to Chris about it. Grehofsky sent Facebook messages to Lauren about the child until 2012.

Lauren and Chris had a child and married in 2011. In 2012, Lauren filed for divorce, but she withdrew the petition. Lauren and Chris moved to Texas, where Lauren filed for divorce a second time before withdrawing this petition as well.

3

In February 2016, Lauren filed the original petition for termination and adoption in Texas. Thereafter, Lauren and Chris returned to Georgia and had the petition transferred to Glynn County. Lauren then filed an amended petition, attaching Chris's consent to the adoption.

At the hearing on the petition, Grehofsky testified that she tried to get visitation in 2009, but after paying her attorney an initial fee the attorney told her Chris could not be found and there was no point in pursuing the matter. She stated that she tried to get visitation in 2010 through Georgia Legal Services, but they could not assist her and she could not afford an attorney because she was a stay-at-home parent. She explained that from 2011 until Lauren filed the petition for adoption, she did not know where Chris and C. N. P. were living. She stated that she did not have an address for them, and her attempts to contact Chris through his family went unanswered. She also stated that she did a Google search on him but did not find an address. She repeatedly explained that she called Chris and that he would not answer or return her calls, and that she stopped sending cards to the address she had because her cards were being returned to her. Grehofsky's husband testified that he had seen her send gifts and attempt to contact Chris, but the calls were unsuccessful and her mail was returned.

4

When asked what interaction she hoped to gain with C. N. P., Grehofsky stated that she was not trying to take the child away from Lauren and Chris, but that she simply wanted to "give her more love" and "add the love" she and her family had for the child. Grehofsky stated that she was willing to reunite with C. N. P. at the rate that was safest for the child. She further stated that she had been sober since June 2008, she had recently started working as a pharmacy technician, and her two children in her care had been doing well. Grehofsky's husband and one of Grehofsky's friends testified that Grehofsky was a good mother to the two children in her care. Lauren testified that C. N. P. was doing well in school and had only recently been told that Lauren was not her biological mother.

The trial court denied the petition for adoption. First, the trial court found that Lauren had not produced clear and convincing evidence that Grehofsky lacked justifiable cause for her failure to communicate with C. N. P., reasoning that Chris had "consistently stonewalled" Grehofsky's efforts to communicate up to and through the filing of the petition. Second, the trial court found that Lauren had not produced clear and convincing evidence that Grehofsky lacked justifiable cause for her failure to provide for C. N. P.'s care and support. The court reasoned that Grehofsky had been a stay-at-home mother without an income, and that even if she had income with

5

which to support C. N. P., she would not have known where to send it because she did not know where Chris and C. N. P. lived. Finally, the trial court found that it was not in C. N. P.'s best interests to terminate Grehofsky's parental rights and allow Lauren to adopt the child. The court reasoned that Grehofsky had improved her life and was properly caring for the two children in her care, and while C. N. P. was doing well and feared being removed from her home with Lauren and Chris, there was no indication Grehofsky sought to remove the child from that home, and instead she wanted to reunite at the pace that was best for the child and to add her family's love and support to the child's life. This direct appeal followed. See *Sauls v. Atchison*, 326 Ga. App. 301, 304 (1) (756 SE2d 577) (2014) (order granting stepparent adoption and terminating biological parent's rights was directly appealable).

1. Lauren first argues that the trial court erred in its application of the statute applicable to stepparent adoptions, OCGA § 19-8-10 (b), in that there was no justifiable cause for Grehofsky's failure to communicate with and provide support for C. N. P., and adoption was in the child's best interests. We disagree, and conclude that the evidence supports the trial court's decision.

Generally, "[a] child whose legal father and legal mother are both living but are not still married to each other may be adopted by the spouse of either parent only

6

when the other parent voluntarily and in writing surrenders all of his or her rights to the child to that spouse for the purpose of enabling that spouse to adopt the child and the other parent consents to the adoption . . . ." OCGA § 19-8-6 (a) (1) (2018).[2] When a biological parent refuses to surrender her parental rights to allow a stepparent adoption, however, the trial court may terminate the biological parent's rights and grant the stepparent's petition to adopt the child if the court

> determines by clear and convincing evidence that the parent, for a period of one year or longer immediately prior to the filing of the petition for adoption, *without justifiable cause*, has significantly failed:
>
> (1) [t]o communicate or to make a bona fide attempt to communicate with that child in a meaningful, supportive, parental manner; or
>
> (2) [t]o provide for the care and support of that child as required by law or judicial decree,
>
> and the court is of the opinion that the adoption is in the best interests of that child, after considering the physical, mental, emotional, and

---

[2] We apply the statute as it exists at the time of our review. *In the Interest of L. L. B.*, 256 Ga. 768, 768 (353 SE2d 507) (1987) ("A reviewing court should apply the law as it exists at the time of *its* judgment rather than the law prevailing at the rendition of the judgment under review, . . . where such application of the new law will impair no vested right under the prior law.") (citations and punctuation omitted).

moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home.

(Emphasis supplied.) OCGA § 19-8-10 (b) (2018). See also *Steele v. Steele*, 346 Ga. App. 196, 197 (816 SE2d 327) (2018). "It is the petitioner's burden to prove that termination of the parental rights is warranted, including the lack of justifiable cause" for failure to communicate with or support the child. *Steele*, supra, 346 Ga. App. at 197 (citation and punctuation omitted).

As explained by the Supreme Court of Georgia, the words "without justifiable cause" as used in [OCGA] § 19-8-10 (b) are constitutionally significant. The Due Process Clause gives a parent *substantial* protection of his or her parental rights requiring that clear and convincing evidence of unfitness be shown before a natural parent's rights in his child may be terminated.

(Citation omitted; emphasis supplied.) *Smallwood v. Davis*, 292 Ga. App. 173, 175 (1) (664 SE2d 254) (2008). See also *McCollum v. Jones*, 274 Ga. App. 815, 819 (3) (619 SE2d 313) (2005) (physical precedent only) ("[N]atural parents have a fundamental liberty interest protected by the Constitution in the care, custody, and management of their children."). Importantly, this Court does not "weigh the evidence or assess witness credibility, but [we] defer to the trial court's factual findings and

8

affirm unless this standard is not met." (Citation omitted.) *Johnson v. Taylor*, 292 Ga. App. 354 (665 SE2d 49) (2008).

(a) *Justifiable cause for the failure to pay child support.* Lauren asserts that the trial court erred in finding that Grehofsky had justifiable cause for failing to pay child support on the basis that she was a stay-at-home mother without an income. Lauren maintains on appeal that justifiable cause must be based on an inability to pay support due to circumstances beyond the parent's control, and the evidence showed Grehofsky was capable of working and owned resources indicating she could pay support. We disagree, as the evidence authorized the trial court's finding of justifiable cause for Grehofsky's failure to pay child support.

> Justifiable cause for the failure to pay child support may be found in situations where the parent has been unable to earn income due to incarceration, mental illness, mental incapacity, hospitalization, or other circumstances beyond their control. However, each case must be decided on its own circumstances. Accordingly, the trial court is vested with significant discretion in making the determination as to whether the parent's inaction is excusable.

(Citations and punctuation omitted.) *Bateman v. Futch*, 232 Ga. App. 271, 272-273 (1) (501 SE2d 615) (1998). See also *Hall v. Coleman*, 264 Ga. App. 650, 653 (1) (592 SE2d 120) (2003) (whether a parent has failed, without justifiable cause, to support

9

the child "is a threshold matter of discretion with the trial court who has the opportunity to observe the parties and hear the evidence") (citation and punctuation omitted).

Contrary to Lauren's assertion on appeal that the trial court relied on Grehofsky's status as a stay-at-home mother, the trial court cited two independent reasons for finding justifiable cause for Grehofsky's failure to pay child support. One of these reasons was that even if she had the money for support payments, Grehofsky did not know where Chris resided with C. N. P. and would not have known where to send the payments. Indeed, the evidence showed that Grehofsky did not know where Chris and C. N. P. lived in the years leading up to the filing of the petition, despite her efforts to contact Chris and determine his location. Given this evidence, and given the trial court's very broad discretion in this area, the trial court was authorized to find Grehofsky had justifiable cause for her failure to support the child. Cf. *Hix v. Patton*, 147 Ga. App. 14, 15 (248 SE2d 28) (1978) (trial court had the discretion to determine whether the father's failure to pay child support was "without reasonable excuse," where he stopped support payments required under a child support order because the mother told him to stop the payments). Compare *Hall*, supra, 264 Ga. App. at 654 (1) (evidence supported trial court's finding that the father's failure to

10

pay child support was without justifiable cause, where there was no evidence he was prevented from supporting the child, but he simply chose not to do so); *Bateman*, supra, 232 Ga. App. at 272-273 (1) (evidence supported trial court's finding that the father's failure to pay child support was without justifiable cause, where mother may have attempted to frustrate his visitation with the child, but he had not sent gifts or made any attempts to communicate with the child for several years, and he "intentionally ignored" his obligation to pay court-ordered support).

(b) *Justifiable cause for the failure to communicate.* Lauren also asserts that the trial court erred in finding Grehofsky had justifiable cause for her failure to communicate with C. N. P. in the year preceding the filing of the petition in February 2016. She contends that Grehofsky produced no tangible evidence of her attempts to communicate with the child since 2012, and the trial court improperly considered Chris's purported actions in thwarting Grehofsky's attempts to communicate with the child, as those actions occurred before February 2015 and the relevant timeframe is the year preceding the filing of the petition.

The evidence authorized the trial court to find that Grehofsky had justifiable cause for her failure to communicate with C. N. P. Grehofsky testified that from 2009 to the time of the filing of the adoption petition in 2016, she attempted to contact

11

Chris and Lauren to discuss C. N. P., but her efforts were unsuccessful, and the only time Chris responded to her was when he told her to stop contacting him and she would be hearing from his lawyer. Grehofsky also sent the child letters and gifts for several years, but the letters were returned to her. This evidence supports the trial court's finding. See *Weber v. Livingston*, 309 Ga. App. 665, 667-668 (710 SE2d 864) (2011) (petitioner failed to demonstrate the father's failure to communicate with the child was without justifiable cause, where the mother refused his request for visitation and told him to hire an attorney and go to court if he wanted to see the child, he attempted to contact the child but the mother did not answer his calls, and he sent gifts and cards to the child that were returned). See also *McCollum*, supra, 274 Ga. App. at 822 (3) (a) (physical precedent only) (trial court was not authorized to find the mother lacked justifiable cause for her failure to maintain a relationship with her child, because although her attempts to communicate with the child may have been sporadic, for 18 months preceding the filing of the adoption petition the petitioner was "stonewalling" her efforts to communicate by not accepting her calls, letters, and cards for the child).

Lauren's emphasis on the lack of tangible evidence of Grehofsky's attempts to communicate with the child from 2012 onward is misplaced, as Grehofsky's

12

testimony alone was sufficient for the trial court to find that Grehofsky made such attempts. See *Sauls*, supra, 326 Ga. App. at 305 (2) (a) ("It was for the trial court, and not for the appellate court, to assess the credibility of the witnesses and resolve contested factual issues.") (citation and punctuation omitted). Also, Lauren is incorrect in her assertion that the trial court relied on Chris's stonewalling efforts in the wrong time frame, as the trial court actually discussed how these efforts continued until the filing of the petition. "The trial court is vested with significant discretion in making the determination as to whether the parent's failure to communicate with the child is excusable." (Citation and punctuation omitted.) *Sauls*, supra, 326 Ga. App. at 305 (2) (a). We will not disturb the exercise of that discretion here.

(c) *C. N. P.'s best interests.* Even if there was not justifiable cause for Grehofsky's failure to communicate with or provide financial support to C. N. P., we must affirm the trial court's order because the trial court acted within its discretion in finding that termination of Grehofsky's parental rights was not in the child's best interests.

Under OCGA § 19-8-10 (b), the trial court considers whether "the adoption is in the best interests of that child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding,

13

including the need for a secure and stable home." "In considering what is in the best interest of the child, the trial court may consider the child's historical relationship with the parent, the child's relationship with the third-party custodian, and the child's special medical, emotional, or educational needs." *Clark v. Wade*, 273 Ga. 587, 593 (544 SE2d 99) (2001).

> With regard to the best interest test in adoption cases, the trial court has very broad discretion with which this Court will not interfere except in cases of plain abuse. . . . [A] court is not allowed to terminate a parent's natural right because it has determined that the child might have better financial, educational or even moral advantages elsewhere. Only under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship. The requirements of Georgia's adoption statutes are mandatory and must be strictly construed in favor of the natural parents, because the application thereof results in the complete and permanent severance of the parental relationship.

(Citations, punctuation, and emphasis omitted.) *In re Marks*, 300 Ga. App. 239, 242-243 (684 SE2d 364) (2009). "Further, where there is slight evidence indicating the best interest of the child will be served by denying the petition to adopt, the discretion residing in the trial court will not be held to have been abused." (Citation omitted.) *Grady v. Hill*, 128 Ga. App. 153, 154 (1) (195 SE2d 794) (1973).

Here, Grehofsky testified that she simply wanted to "add the love" she and her family had for C. N. P., she had no intention of removing the child from Lauren and Chris's care, and she would reunite with the child at whatever rate was safest for the child. There was also evidence that Grehofsky had been sober for years, had recently attained a job, and was a good mother to the two children in her care. This evidence, along with Grehofsky's efforts to communicate and develop a relationship with C. N. P., authorized the trial court's finding that terminating Grehofsky's parental rights and allowing Lauren to adopt C. N. P. was not in the child's best interests, despite the evidence that the child was doing well in Chris and Lauren's home. See *McCollum*, supra, 274 Ga. App. at 824-826 (3) (b) (physical precedent only) (where the evidence showed that the child was likely to have his needs equally met in either home, in that the child was doing well with the petitioners and the biological mother was properly caring for two other well-adjusted children, the case was controlled by the fundamental liberty interest of the mother to the care, custody, and management of her own children). Compare *McCurry v. Harding*, 270 Ga. App. 416, 420 (4) (606 SE2d 639) (2004) (trial court was authorized to find adoption was in the children's best interests, where there was no evidence the father made any attempts to contact or support them for three years before the adoption petition was filed). While Lauren

15

asserts that the trial court's best interests finding was inconsistent with its statement that uprooting C. N. P. from her home would be detrimental, we discern no such inconsistency, as the trial court explained there was no indication Grehofsky sought to remove the child from her home.

2. Next, Lauren argues that the trial court's decision violates the Equal Protection Clause because Grehofsky's parental rights would have been terminated if Grehofsky had been a man. However, appellate courts "will not rule on a constitutional question unless it clearly appears in the record that the trial court distinctly ruled on the point," and the record in the present case contains no such ruling. (Citation omitted.) *Sears v. Dickerson*, 278 Ga. 900, 901 (1) (607 SE2d 562) (2005). Thus, we do not reach this enumeration of error or transfer the case to our Supreme Court. See *Griffin v. Burden*, 281 Ga. App. 496, 497 (2) (636 SE2d 686) (2006).

3. Finally, Lauren argues that the trial court was overly deferential to Grehofsky's liberty interest in C. N. P., despite the fact that the child's best interests are of equal constitutional weight. To the extent this argument challenges the evidence supporting the trial court's finding regarding the child's best interests, we need not address this issue separately, given our conclusion regarding the child's best

16

interests in Division 1 (c). To the extent this argument presents a constitutional claim, we do not reach it, as the record does not contain a distinct ruling by the trial court on any such claim.

Accordingly, we conclude that there is a lack of clear and convincing evidence to support the termination of Grehofsky's parental rights, and we affirm the trial court's order denying Lauren's petition to terminate Grehofsky's parental rights and to adopt C. N. P.

*Judgment affirmed. Brown and Goss, JJ., concur.*